PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| PAUL POPA, *et al.*, | ) | |
| | ) | CASE NO. 4:14cv143 |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | JUDGE BENITA Y. PEARSON |
| | ) | |
| CNX GAS COMPANY, LLC, *et al.*, | ) | |
| | ) | **MEMORANDUM OF OPINION AND** |
| Defendants. | ) | **ORDER** [Regarding ECF No. 3] |


Pending before the Court is Plaintiff's Motion to Remand to State Court.  ECF No. 3.

Defendants CNX Gas Company, LLC and Hess Ohio Developments, LLC (collectively

"Defendants") responded (ECF No. 11), and Plaintiffs replied (ECF No. 13).  For the reasons that

follow, the Court denies Plaintiffs' motion.

## I.  Background

The instant case was removed from the Mahoning County Common Pleas Court on

January 22, 2014 pursuant to 28 U.S.C. §§ 1441 and 1446, and based on diversity jurisdiction

under 28 U.S.C. § 1332.  ECF No. 1 at 2.  In the Complaint, Plaintiffs seek declaratory judgment

that their oil and gas lease, effecting 149 acres: has expired; violates public policy; is illusory;

and has been forfeited in part.  ECF No. 1-1 at 16.  They also request judgment declaring

Defendants breached the implied covenants, and that the Court issue an order cancelling and

terminating the lease.  *Id*.

Defendants, in the Notice of Removal, assert the Court has subject matter jurisdiction

(4:14cv143)

pursuant to § 1332 because complete diversity of citizenship exists and the amount in

controversy is greater than $75,000.[1]  ECF No. 1 at 3, ¶¶7-9; at 7, ¶38.  In support of the

jurisdictional amount, Defendants submitted an affidavit of Timothy Surmick.  ECF No. 1 at 7,

¶38; 1-2.  Surmick declared that, "[b]ased upon my experience in acquiring oil and gas interests

in similar properties in counties surrounding Mahoning County, Ohio, the cost for CNX to

reacquire the oil and gas rights underlying the subject 149 acre tract would exceed $75,000."

ECF No. 1-2 at 3, ¶8.

Thereafter, Plaintiffs filed a Motion to Remand.  ECF No. 3.  They allege that Defendants

have not satisfied their burden of proving that the amount in controversy exceeds $75,000, and

that the instant matter should be remanded "unless Defendants . . . can establish that the amount

in controversy more likely than not exceeds $75,000."  Id. at 1.  Plaintiffs contend that case law

in the Sixth Circuit indicates that, in a declaratory judgment, the court considers the amount in

controversy by valuing the mineral interest in the land, and not the value of the lease from the

defendant's perspective.  Id. at 12-13.  Because Defendants only described the value of the lease

from their perspective, Plaintiffs submit Defendants have not met their burden establishing the

amount in controversy.  Id.

In response, Defendants provide an affidavit of Joseph Coughlin as additional evidence of

the value of the mineral interest in the land.  ECF No. 11 at 7; 11-1.  Plaintiffs, in reply, argue

that the Coughlin affidavit is insufficient because there are better ways for Defendants to show

---

[1]  Plaintiffs originally named an Ohio corporation, The East Ohio Gas Company, *d/b/a*
Dominion East Ohio as a defendant in this action.  ECF No. 1-1 at 2.  The East Ohio Gas
Company was voluntarily dismissed from the action.  *See* ECF No. 10; 12.

2

(4:14cv143)

the value of the mineral interest.  ECF No. 13 at 5, 7, 10, 13 (urging the Court to only consider the "book value" or the amount Defendants paid for the interest in the lease).  Plaintiffs also argue that, "[b]ecause Defendants did not provide any specific evidence, they failed to thoroughly analyze the value of their claimed mineral interest, thereby failing to meet their burden of proof." *Id.* at 13.

Rather then consider what Defendants might have provided the Court as evidence of the value of the mineral interest, the Court considers the evidence Defendants did provide to the Court—the Coughlin affidavit—to determine whether Defendants have met their burden of proving the amount in controversy exceeds $75,000.

## II.  Legal Standard

A defendant seeking removal on the basis of diversity jurisdiction has the burden of proving by a preponderance of the evidence that the complete diversity and amount in controversy requirements are met.  *See, e.g.*, *Gafford v. Gen. Elec. Co.*, 997 F.2d 150, 155 (6th Cir. 1993), overruled on other grounds by *Hertz Corp. v. Friend*, 130 S.Ct. 1181, 1192-93 (2010).  The right of removal is determined by review of a plaintiff's pleading at the time of the petition for removal.  *Ramski v. Sears, Roebuck, & Co.*, 656 F.Supp. 963, 965 (N.D.Ohio 1987). "A court may, however, look at subsequent pleadings and proceedings in a case . . . to the extent that they 'shed light on the facts as they existed at the outset of the litigation and on the actual interests of the parties.'" *Hrivnak v. NCO Portfolio Mgmt.*, 723 F.Supp.2d 1020, 1024 (N.D.Ohio 2010) (citing *American Motorists Ins. Co. v. Trane Co.*, 657 F.2d 146, 151 n. 3 (7th Cir. 1981)).  A district court has "wide discretion to allow affidavits, documents and even a

(4:14cv143)

limited evidentiary hearing to resolve disputed jurisdictional facts."  *Ohio Nat. Life Ins. Co. v.*

*United States*, 922 F.2d 320, 325 (6th Cir.1990) (citations omitted).  The removal petition is to

be strictly construed, and the district court must resolve all disputed questions of fact and

ambiguities in the controlling state law in favor of the non-removing party.  *Coyne v. American*

*Tobacco Co.*, 183 F.3d 488, 493 (6th Cir. 1999).

In actions seeking a declaratory judgment, the amount in controversy is measured by "the

value of the object of the litigation."  *Northup Properties, Inc. v. Chesapeake Appalachia, LLC,*

567 F.3d 767, 770 (6th Cir. 2009) (citing *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S.

333, 347 (1977).  In the context of an oil and mineral lease, the Sixth Circuit "calculate[s] the

amount in controversy by accounting for the mineral interest in the land, and not merely the

possessory interest.'"  *Northup Props.*, 567 F.3d at 770 n.1; *Caldwell v. OHTEX Energy Co.,*

2011 WL 1465997, at * 2 (S.D.Ohio, April 18, 2012).  "In valuing mineral leases, federal courts

require competent proof."  *Id.*

### III.  Analysis

Defendants' affiant, Joseph Coughlin, holds a Bachelor of Science degree in Petroleum

Engineering and is the Manager of Reservoir Engineering for CNX Gas.  ECF No. 11-1 at 2, ¶¶2,

4.  As such, he has "personal knowledge as to the exploration, development and production of oil

and natural gas in the Appalachian Basin, including Eastern Ohio, and, more particularly, such

activities in and around Mahoning County, Ohio."  *Id.* at ¶2.  Coughlin further declares, in

relevant part,

> 5.  Throughout my career (and currently), I have evaluated oil and gas production
> from wells, including the value of the reserves and the economics related to the

4

(4:14cv143)

same.  A significant aspect of my regular duties for CNX Gas is to evaluate the
productivity and economics of oil and gas wells, and in particular, wells
producing (or to be producing) from the Utica Shale and Marcellus Shale
formations—known in the industry as "deep wells" based upon the depths of the
relevant formations.  For planned wells, this involves predicting anticipated
production, costs and revenue.  These evaluations are based on, among other
things, actual production of gas from existing wells in the vicinity, and estimating
costs and revenue based upon existing and projected costs and gas prices, all in
the context of analytical methods that are accepted in the oil and gas industry.

*          *          *

13.  There are currently no deep gas wells on the subject 149 acre property.
However, CNX Gas and Hess intend to develop the properties with deep wells
drilled to the Utica Shale under the terms of the leases in dispute.  Because of the
large scale required to effectively and economically produce gas from the Utica
Shale, lease acreage is commonly combined into "units" for drilling multiple
wells directionally drilled from a single pad.

14.  CNX Gas and Hess plan to develop the acreage in question as part of a 575
acre unit, having multiple wells.  The 149 acres in question make up 26% of what
will be a 575 acre drilling unit.  CNX Gas and Hess plan to drill five (5) wells on
the 575 acre unit as part of a five well pad.  Based on the foregoing parameters,
the cost to drill and complete the five well pad is approximately $49,000,000.

15.  The natural gas industry uses several generally accepted industry practices
to evaluate projected production.  Particularly, the industry uses data from nearby
wells, analysis of the formation at issue, and "type curves" to project future
production over time.  A type curve is an industry-accepted projection method
which is based upon the invariable characteristic of oil and gas wells to have peak
production at inception and naturally decline over time as the minerals are
extracted.

16.  Relevant to the acreage at issue, I am able to project production for the five
well unit based upon these generally accepted industry practices.  Among the
evaluative factors in this analysis is production and pressure data from three wells
that CNX Gas has drilled in the surrounding area.  Two of these wells are within
one mile of the acreage in question.  Another well is approximately six miles
away.  Further, the Utica Formation that underlies the acreage in question as well
as the three nearby wells is what is known in the industry as a "blanket
formation[,]"[] meaning that the amount of natural gas underlying the land is
largely uniform throughout the formation in a given area, creating generally
consistent production in wells drilled into the formation.  In conjunction with this

5

(4:14cv143)

actual data, CNX Gas employs a type curve that it has developed for shale gas in the Appalachia Basin.  The type curves employed by CNX Gas are externally audited and comply with all United States Securities and Exchange Commission guidelines.  It is accepted in the oil and gas industry to apply these type curves in projecting production from Utica Shale wells.  It is the composite of these data and techniques that form the basis of the production projection outlined below.

17.  Based upon current knowledge, wells in the area of the property at issue in the Popa case will produce natural gas, condensate, and natural gas liquids.  The latter two are constituent components that are present in production of raw natural gas from wells and are marketable as separate commodities to purchasers of natural gas products.

18.  Based upon the foregoing parameters accepted in the industry, gross production from the five well pad drilled on the properties over the next sixty-five years is projected to be approximately: (1) natural gas: 8.4 billion cubic feet (BCF); (2) condensate (CND): 670,000 barrels (MBBLs); and (3) natural gas liquids (NGL): 420,000 barrels (MBBLs).  Based upon CNX Gas' analysis for the unit, it is estimated that more than 50% of this production will be in the first 10 years after drilling.

19.  Future prices of natural gas, CND and NGL are publicly set on the New York Mercantile Exchange (NYMEX), which is the industry recognized index for such futures.  The NYMEX prices are set based upon actual contracts between natural gas suppliers and purchasers of natural gas for purchase of gas and related constituents,[] and the industry uses current NYMEX prices to project for the next 10 years.  For purposes of the analysis herein, prices were based upon a 3% annual escalation after 10 years, which is consistent with industry practice.

20.  Based upon the projection of production outlined above and the NYMEX prices applicable to such production, after taking into account all expenses and production taxes, including 26% of the gross cost of drilling the five well pad as well [as] royalties to landowners within the unit including the 1/8 royalty called for by the leases at issue in the Popa case, the net before income tax (BFIT) discounted cash flow yields a net present value of $373,500 for the 149 acres in question, after a 10% discounting rate to present value is applied.  The after income tax net present value at a 10% discount rate would be would be $154,000.

21.  Accordingly, the net BFIT value of the interests of CNX Gas and Hess have in the minerals subject to the leases encumbering the subject 149 acres is at least $373,500.

6

(4:14cv143)

*Id*. at 2-6.

Plaintiffs challenge the Coughlin affidavit because "it provides no detail as to the production data and pressure data from [the nearby] wells, nor does it specifically identify those wells." ECF No. 13 at 4. Plaintiffs further complain that the affidavit is speculative in nature, and that it does not provide "specific, verifiable factual support for its conclusions." *Id*. at 8. Specifically, Plaintiffs criticize the accounting as "based on hypothetical facts regarding unproven natural resources with no measurable costs to date." *Id*.

The Court finds that the Coughlin affidavit provides enough specific, verifiable factual support indicating that the amount in controversy more likely than not exceeds $75,000. *See Northup Props*., 567 F.3d at 770-771 ("accounting for mineral interests is not an exact science . . . . Even so, [] the speculative character of such interests 'does not defeat the existence of a "market value" in mineral rights.'"(citation omitted)). Coughlin adequately describes the methodology used to project future production and explains how the current production by wells in the area can reasonably proximate the expected production of wells on Plaintiffs' land. That Coughlin does not specifically disclose the production and pressure data or identify the wells by name and number does not diminish the information provided therein.

In support of its argument, Plaintiffs offer the affidavits supplied to the court in *Caldwell* and *Usery v. Anadarko Petroleum Corp*., 606 F.3d 1017 (8th Cir. 2010).[2] ECF No. 13-1, 13-2, 13-3. The affidavit submitted to the court in *Caldwell* was rejected by the court as competent

---

2  The court in *Usery* cited with approval the Sixth Circuit's decision in *Northup Props*. *See Usery*, 606 F.3d at 1020.

7

(4:14cv143)

proof that the jurisdictional amount was met.  2011 WL 1465997, at *4.  The *Caldwell* court

noted that the affiant was not an expert, had no specialized training, and the "affidavit itself lacks

analysis or any basis for its conclusion." *Id*.  In contrast, Coughlin is an expert with specialized

training and the affidavit provides analysis and a sound basis for its conclusion.

      In *Usery*, the Eighth Circuit found that the two affidavits submitted by the defendants did

not provide proof of the jurisdictional amount.  606 F.3d at 1019-20.  Although the affiants were

experts, the *Usery* court found the affidavits did not provide enough information.  The court

noted that one affidavit cited how much a nearby well produced, but that the nearby well did not

lie in the same shale formation where the mineral interest at issue was located.  *Id*. at 1020.  Nor

did the affiant offer an explanation as to how the nearby well could provide a comparison.  *Id*.  In

contrast, the Coughlin affidavit provides that the nearby wells, like the mineral interest at issue,

lie within the Utica Formation.  ECF No. 11-1 at 5, ¶16.  Coughlin further explains that the

"natural gas underlying the land is largely uniform throughout the formation in a given area,

creating generally consistent production in wells drilled into the formation." *Id*.  Thus, unlike the

*Usery* affidavit, Coughlin's affidavit describes nearby wells within the same shale formation and

explains how the nearby wells provide a comparison.

      The *Usery* court found the other affidavit lacking because it did not contain an estimate of

"how long the mineral interest at issue might reasonably be expected to produce, whether its

production would be relatively constant over its productive life, or what a reasonable discount

rate might be in the circumstances."  606 F.3d at 1019.  In contrast, the Coughlin affidavit

describes the use of a "type curve" to project future production over time.  ECF No. 11-1 at 5-6,

(4:14cv143)

¶¶16, 18, 19.  It also provides the discount rate and whether the estimated income is gross or net.

*Id.*, ¶20; *see* *Usery*, 606 F.3d at 1019 ("Another very real difficulty is that the affiant offers no

indication of whether the estimated income is gross or net.").

      In sum, the Court finds that Defendants have, through the Coughlin affidavit, submitted

competent proof that the amount in controversy more likely than not exceeds $75,000.  *See*

*Northup Props.*, 567 F.3d at 769 (affirming district court determination that amount in

controversy was met; affidavit estimated "future cash flows," the discounted value and the initial

cost of drilling the well).

## IV.  Conclusion

      For the reasons explained above, the Court denies Plaintiffs' motion to remand.


      IT IS SO ORDERED.


  April 7, 2014                    */s/ Benita Y. Pearson*
Date                           Benita Y. Pearson
                              United States District Judge

9