PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| PAUL POPA, *et al.*, ) | |
| ) | CASE NO. 4:14cv143 |
| Plaintiffs, ) | |
| ) | |
| v. ) | JUDGE BENITA Y. PEARSON |
| ) | |
| CNX GAS COMPANY, LLC, *et al.*, ) | |
| ) | **MEMORANDUM OF OPINION AND** |
| Defendants. ) | **ORDER** [Regarding ECF No. 15] |

Pending before the Court is the Motion to Dismiss filed by Defendants CNX Gas Company LLC ("CNX") and Hess Ohio Developments, LLC ("Hess") (collectively, "Defendants").  ECF No. 15.  The Court has been advised, having reviewed the record, the parties' briefs, and the applicable law.  For the reasons that follow, Defendants' motion is granted.

**I. Background**

**A. Facts**

This dispute involves the validity of an oil and gas lease that has experienced changes in real-property ownership and mineral-rights assignments.  Plaintiffs—Paul Popa, Thomas Muir, and Sandra Muir—claim that the lease at issue is no longer valid, and that Defendants no longer own the deep mineral rights underneath their respective properties.

**1. Plaintiffs' Land Ownership**

Popa is the owner of a 73.92-acre parcel of real property located in Mahoning County,

(4:14cv143)

Ohio.  ECF No. 14 at 3, ¶11.  Thomas Muir and Sandra Muir together own a 65.25-acre parcel of real property and ten acres of shallow mineral rights in one parcel of real property in Mahoning County, Ohio.  Id. at 3-4 ¶¶11-13.  Together, the Popa and Muir parcels constitute a single property for oil and gas purposes.  Id. at 4, ¶14.  The oil and gas rights for Plaintiffs' property are subject to separate oil and gas leases (collectively referred to as the "Lease") that contain identical language on pertinent parts.

### 2. The Lease

Plaintiffs' predecessors-in-interest signed the Lease with the East Ohio Gas Company ("EOG") in 1961.  ECF No. 14 at 3, ¶12(b).  Like traditional oil and gas leases, the Lease contained a granting clause that reads in part:

> That the Lessor, for and in consideration of One-dollar ($1.00) and other valuable consideration in hand paid by the Lessee, the receipt of which is hereby acknowledged, and the covenants and agreements hereafter contained, does hereby lease and let exclusively unto the Lessee, for the purpose of drilling, operating for, producing and removing oil and gas and all the constituents thereof . . .

ECF No. 21-2 at 1.  The duration of the Lease is contained in the habendum clause.  The habendum clause holds the Lease in effect for "…twenty years and so much longer thereafter … as oil or gas or their constituents shall be found on the premises in paying quantities in the judgment of the Lessee…"  Id.  The lessee also has a right to create a "development unit" that consolidates either of the leased premises with other land.  Id.  As a result, if the lessee operates a well on part of the development unit, the Lease is extended with respect to the entire unit.  Id. The Lease concludes with a clause that states:

2

(4:14cv143)

> All covenants and conditions between the parties hereto shall extend to their heirs, personal representatives, successors and assigns, and the Lessor hereby warrants and agrees to defend the title to the lands herein described. It is mutually agreed that this instrument contains and expresses all of the agreements and understandings of the parties in regard to the subject matter thereof, and no implied covenant, agreement or obligation shall be read into this agreement or imposed upon the parties or either of them.

*Id*.

### 3. Unitization

EOG consolidated or unitized Plaintiffs' properties on November 10, 1972. ECF No. 14-12. After the unitization, EOG gradually assigned interest under the Lease to new parties. EOG's first assignment came on April 5, 1974 when it assigned its shallow rights to H.D. Collins. ECF Nos. 14 at 4, ¶17; 17 at 7. There are currently two wells on the unit capable of producing oil and gas from the shallow rights—one well is currently owned by D&L Energy and is no longer producing, and the other well is owned by Everflow Eastern Partners L.P. ("Everflow") and is currently producing. *Id*. at 9, ¶¶50-53; ECF No. 17 at 8. EOG maintained its ownership of the deep mineral rights until November 29, 2004 when it assigned this interest to what is now Defendant CNX.[1] ECF No. 17 at 8. CNX subsequently conveyed 50% of its interest in the deep mineral rights to Defendant Hess. *Id*.

At that the filing of this lawsuit, Defendants were not operating a well on Plaintiffs' unitized property and no party was operating a well that was producing oil or gas from the

---

[1] The deep rights were originally assigned to Dominion Exploration & Production, Inc. ECF No. 15-1. In 2001, the name of the record owner of the consolidated leases became "CNX Gas Company, LLC." ECF No. 15 at 2, ¶7.

3

(4:14cv143)

Defendants' deep rights.  The only activity on Plaintiffs' unitized property is the Everflow well accessing the shallow rights.

### B. Claims

In their First Amended Complaint, Plaintiffs assert eight state law claims challenging the Lease: breach of lease; forfeiture; expiration; lack of mutuality; lack of consideration; violation of the implied covenant to reasonably develop; violation of Ohio public policy; and an action to quiet title.  ECF No. 14 at 6-20.  Among other relief, Plaintiffs seek declaratory judgment under R.C. § 2721.02(A), R.C. § 2721.03 and R.C. § 2721.04, that Defendants' interest in the lands are outside the development unit and have, therefore, expired.  *Id*. at 5, 23-25; at 20, ¶126 G-H.

## II.  Legal Standard

### A. Motion to Dismiss

In ruling on a motion to dismiss pursuant to Fed. R. Civ. Pro. 12(b)(6), the Court must take all well-pleaded allegations as true and deduce the allegations in the light most favorable to the plaintiff.  *Erickson v. Paradus*, 551 U.S. 89, 94 (2007) (citations omitted).  In order for a complaint "to survive a motion to dismiss the complaint must . . . 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  The complaint must provide support for "legal conclusions" with "factual allegations."  *Id*. at 679.  Furthermore, the Court "should assume the[] veracity" of factual allegations within the complaint.  *Id.*  However, the factual allegations must be enough to raise a right to relief above a speculative level.  *Twombly*, 550 U.S. at 555 (citing authorities).  Ultimately, the claims asserted within the complaint must be plausible and not

4

(4:14cv143)

merely conceivable. Id. at 570.

In addition to reviewing the claims set forth in the complaint, a court may also consider exhibits, public records, and items appearing in the record of the case as long as the items are referenced in the complaint and are central to the claims contained therein. Bassett v. Nat'l Collegiate Athletic Ass'n, 528 F.3d 426, 430 (6th Cir. 2008); Erie County, Ohio v. Morton Salt, Inc., 702 F.3d 860, 863 (6th Cir. 2012).

### B. Ohio Contract Law

Both parties rely on Ohio state law in their filings. The Lease was signed in Ohio by Ohio residents and an Ohio Corporation. See, e.g., ECF Nos. 21-1; 14-10 at 2. The properties and interests in this case involve land that is located entirely in Ohio. As a result, Ohio contract law controls the Court's interpretation of the Lease in this diversity case. Oheyan v. Safeco Ins. Co. of Illinois, 747 N.E.2d 206, 209 (Ohio 2001) (explaining that the choice of law lies with the state having the most significant relationship to the transaction and parties, citing Restatement (Second) of Conflict of Laws §188(1)). No party disputes the applicability of Ohio law.

In Ohio, the interpretation of a written lease agreement is a question of law. Heritage Court LLC v. Merritt, 931 N.E.2d 194, 198 (Ohio Ct. App. 2010). Ohio courts assess leases through "traditional rules of contract interpretation." Mark-It Place Foods, Inc. v. New Plan Excel Realty Trust, 804 N.E.2d 979, 992 (Ohio Ct. App. 2004). A court analyzes the terms of the lease in order "to determine the intent of the parties." Hamilton Ins. Services Inc., v. Nationwide Ins. Cos., 714 N.E.2d 898, 900 (Ohio 1999). "The intent of the parties to a contract is presumed to reside in the language they chose to employ in the contract." Kelly v. Medical Life Ins. Co.,

5

(4:14cv143)

509 N.E.2d 411, 413 (Ohio 1987). "Common words appearing in a written instrument will be given their ordinary meaning unless manifest absurdity results, or unless some other meaning is clearly evidenced from the face or overall contents of the instrument." *Foster Wheeler Enviresponse, Inc. v. Franklin County Convention Facilities Auth.*, 678 N.E.2d 519, 526 (Ohio 1997) (quoting *Alexander v. Buckeye Pipe Line Co.*, 374 N.E.2d 146 (Ohio 1978)).

> With respect to oil and gas leases, Ohio courts have addressed the instruments as follows:
>
> The rights and remedies of the parties to an oil and gas lease must be determined by the terms of the written instrument, and the law applicable to one form of lease may not be, and generally is not, applicable to another and different form. Such leases are contracts, and the terms of the contract with the law applicable to such terms must govern the rights and remedies of the parties.

*Swallie v. Rousenberg*, 942 N.E.2d 1109, 1117 (Ohio Ct. App. 2010) (quoting *Harris v. Ohio Oil Co.*, 48 N.E. 502, 506 (Ohio 1897)).

### III. Analysis

#### A. Breach of the Lease

Plaintiffs allege that Defendants and Defendants' predecessors-in-interest breached the Lease when they assigned interest under the Lease to other parties. ECF No. 14 at 7, 30-33. Plaintiffs contend that there is a contradiction between the language in the Lease's granting clause and the final paragraph.[2] *Id.* at 33-34; ECF No. 17 at 9-10. While the granting clause

---

[2] Plaintiffs referred to the Lease and assignments in the First Amended Complaint, and filed copies as exhibits. As a result, the Court may consider these documents when ruling on the motion to dismiss. *See Bassett*, 528 F.3d at 430 ("When a court is presented with a Rule 12(b)(6) motion, it may consider the Complaint and any exhibits attached thereto, public records, [*etc.*] . . . so long as they are referred to in the Complaint and are central to the claims contained therein.").

(4:14cv143)

states that Plaintiffs' predecessors-in-interest ". . . lease and let *exclusively* unto the lessee . . .," the final paragraph of the Lease states that "[a]ll covenants and conditions between the parties hereto shall extend to their heirs, personal representatives, successors and *assigns* . . ." ECF No. 21-1 at 1 (emphasis added).  Plaintiffs assert that the word "exclusively" within the granting clause indicates the parties' intent to convey oil and gas rights to Defendants' predecessor-in-interest, EOG, and no one else during the term of the Lease.  ECF No. 14 at 7, ¶30-34.  In other words, Plaintiffs contend that the term "exclusively" explicitly revoked EOG's right to assign interest under the Lease to other parties.  *Id*.

Plaintiffs also contend that the language in the Lease that applies the terms to the parties' "assigns" contradicts the granting clause.  *Id*. at 7, 32-33.  Plaintiffs argue that this creates an ambiguity that the Court should construe against Defendants as the *de facto* drafter.  *Id*.  Defendants maintain that there is no contradiction in the Lease, and that rights under a lease are assignable without "an express clause prohibiting assignment."  ECF No. 20 at 3.

In order for a contradiction to exist within the Lease, the Court must interpret the term "exclusively" in the granting clause as a restriction of the lessee's right to assign.  However, oil and gas law recognizes the lessee's right to partially or entirely assign interests "in the absence of an *express* provision in the lease restraining assignments by the lease."  2-4 WILLIAMS AND MEYERS, OIL AND GAS LAW § 402 (2012) (emphasis added).  Examples of language that expressly waives or places a contingency on a lessee's right to assign interest are as follows:

> It is understood that the (Lessee) will not assign the above-mentioned lease in whole or in part … without the consent of the Lessor.
>
> This lease is made on the condition that the Lessee shall not sell any interest in the

7

(4:14cv143)

> leasehold created hereby, or any rights to or interests in the oil and gas in place without the prior consent of Lessor, and upon breach of said condition, this lease shall terminate, at Lessor's option.

*Id*. Though Ohio courts have not dealt with an alleged contradiction within a lease that pertains to assignment and the term "exclusively" within a granting clause, an Ohio appellate court described that a lessee "appear[ed]" to breach a lease by assigning an interest to a third party in violation of language within the lease that stated:

> This lease may not be assigned or transferred by lessee prior to the drilling and completion of the (two wells) 2 wells without the prior written consent of lessor.

*Curtis v. Am. Energy Development Inc.*, No. 2000-l-133 2002 WL 1357726, at *1-2 (Ohio Ct. App. June 21, 2002).

In the instant case, the use of the term "exclusively" is unrelated to the lessor's right to assign. Unlike the examples above, the term "exclusively" lacks a specific reference to assignability. This interpretation is also consistent with oil and gas lease forms. Such forms employ the term "exclusively" in the same manner as the Lease in the instant case. *See* 5 SUMMERS OIL AND GAS § 60:3 (3d. ed.); 28A West's Legal Forms, Specialized Forms §22:39; 3 Ohio Forms Legal and Bus. § 7b:29 (2013 ed.). Specifically, the granting clause in 3 Ohio Forms Legal and Bus. §7b:29 (2012 ed.) uses "exclusively" in a manner identical to the Lease, while a separate provision contains an express limit of the lessee's assignment. The Court finds it unlikely that a form would include a clause specifically limiting the right of assignment if the term "exclusively" also pertained to the lessee's right to assign. This would be redundant. Rules of contract interpretation advise against interpretations that result in redundancy. *See Eastham v. Chesapeake Appalachia*, L.L.C., —F.3d— , 2014 WL 2535385, at *4 (6th Cir. June 6, 2014)

8

(4:14cv143)

(citing *Local Mktg. Corp. v. Prudential Ins. Co.*, 824 N.E.2d 122, 125 (Ohio Ct. App. 2004)).

As a result of the apparently common use of the term "exclusively" in the granting clause and the Court's obligation to ensure that "… no provision is to be wholly disregarded as inconsistent with other provisions unless no other reasonable construction is possible," the Court finds the use of the term "exclusively" represents the parties' intent with respect to the transfer of rights between the parties, not the lessee's right to make future assignments. *Karabin v. State Automobile Mutual Ins. Co.*, 462 N.E.2d 403 (Ohio 1984) (internal quotation marks and citation omitted). Accordingly, Plaintiffs' breach of lease claim is dismissed.

**B. Expiration**

Plaintiffs claim that the Lease has expired with respect to Defendants' interest because Defendants have not produced or engaged in any activity listed in the habendum clause. ECF No. 14 at 9-11, 54-67. This argument is based on the premise that Defendants' deep rights are not part of the development unit held by the shallow Everflow well. ECF No. 17 at 14. According to Plaintiffs, the Lease only applies to the shallow depths. *Id*. Defendants argue that the development unit consists of all depths and that the Everflow well sustains the Lease in its entirety per the habendum clause. ECF No. 20 at 6.

The habendum clause provides that the lease extends so long as the lessee finds oil or gas "on the premises." ECF No. 21-1 at 1. The language does not provide a depth restriction attached to the lessee's rights, and as a result, the habendum clause applies to all depths underneath the surface. Nevertheless, because the original lessee, EOG, had the ability to extend the lease by producing oil or gas from any depth, the Court must determine whether or not the

9

(4:14cv143)

assignments that followed the execution of the Lease severed the Lease and created separate leases. If the rights initially obtained by EOG were severed, Defendants' interest per the Lease is outside of the development unit. Consequently, Defendants would be bound by a separate habendum clause, and would have to produce from their deep rights in order to maintain their interest.

The Court finds *Gardner v. Oxford Oil Co.*, 7 N.E.3d 510 (Ohio Ct. App. 2013) instructive. In *Gardner*, an oil company assigned its shallow rights under a lease but retained the deep rights. *Id*. at 512. The court found that this partial assignment of rights "did not constitute a new, separate conveyance or contract," and that the deep rights "remained subject to the terms of the original lease agreement." *Id*. at 512, 515. Though Ohio courts have not dealt extensively with the issue of determining whether or not assignments sever leases, the reasoning in *Gardner* is analogous to the question of severance, and is consistent with standard oil and gas law. *See* 3-6 WILLIAMS AND MYERS OIL AND GAS § 604.10 ("Production by one partial assignee will suffice to hold the lease as to interests of other partial assignees of the lessee."); *Caldwell v. Kriebel Res. Co., LLC*, 72 A.3d 611, 613 (Pa. Super. Ct. 2013) (lessor argued that lessee was only producing from shallow depths; court recognized the lessee's deep rights and did not sever the lease).

Here, Defendants' interest has not expired because the assignment did not sever the Lease. As a result, the Everflow well sustains the Lease in its entirety per the habendum clause. Plaintiffs' expiration claim is dismissed.

**C. Public Policy**

10

(4:14cv143)

Plaintiffs allege that the Lease violates Ohio public policy because Defendants did not produce within the deep rights of the Lease.  ECF No. 14 at 12, ¶¶74-76.  "It is the public policy of the state of Ohio to encourage oil and gas production when the extraction of those resources can be accomplished without undue threat of harm to the health, safety and welfare of the citizens of Ohio."  *Newbury Twp. Bd. of Trustees v. Lomak Petroleum (Ohio) Inc.*, 583 N.E.2d 302, 304 (Ohio 1992).

Ohio courts have found a violation of public policy in cases in which no production occurred on the lessor's land.  In *Ionno v. Glen-Gery Corp.*, 443 N.E.2d 504, 508 (Ohio 1983) the Supreme Court of Ohio held that lessees who failed to engage in "…any sort of mining production on the leased premises since the inception of the lease…" breached the lease and went against public policy.  Unlike *Ionno*, however, Plaintiffs' unitized property is experiencing production *via* the Everflow well.  The Everflow production on the unitized property holds the entire unitized property under the Lease.  The presence of actual production on Plaintiffs' property, therefore, distinguishes this case form *Ionno*.

Plaintiffs also rely on two cases from Ohio courts of common pleas in order to bolster their public policy argument—*Belmont Hills Country Club v. Beck Energy Corp.*, Case No. 11-CV-290 (Belmont County Court of Common Pleas, July 8, 2013) (ECF No. 17-1); and *Clark v. Myers*, Case No. 12-CI-0278 (Coschocton County Court of Common Pleas, February 14, 2013) (ECF No. 17-3).  The Court finds both cases distinguishable.

In *Belmont Hills*, the lessee engaged in no production on the property.  In addition, the language of the contract that the court deemed to be against public policy contained different

11

(4:14cv143)

language than the Lease in the instant case. ECF No. 17-1 at 6. The lease in *Belmont Hills* enabled the lessee to maintain the lease

> for a term of five years and as much longer thereafter as oil or gas or their constituents are produced or are *capable* of being produced on the premises in paying quantities, in the judgment of the Lessee, or as the premises shall be operated by the lessee in search for oil and gas….

*Id*. (emphasis added). As a result, the *Belmont Hills* lease enables the lessee to maintain its rights by merely determining that the land is capable of production. Unlike *Belmont Hills*, the Lease in the instant case contains a habendum clause that enabled the lease to run:

> … for a term of twenty years and so much longer thereafter (1) as either oil or gas or their constituents shall be found on the premises in paying quantities in the judgment of the Lessee or as the premises shall be operated by the Lessee in search for oil or gas, or as gas shall be injected, stored, or held in storage, or removed into, in and from and sands strata or formations underlying the premises.

ECF No. 21-1.

The language in the Lease's habendum clause: "oil and gas . . . shall be found on the premises in paying quantities in the judgment of the lessee" equates to production. The Ohio Supreme Court has stated that leases in which "lessees must actually find oil in paying quantities, . . . is the same as obtaining and producing it in paying quantities." *Murdock West Co. v. Logan,* 69 N.E. 984, 985 (Ohio 1904). Unlike the Lease in the instant case, the lease in *Belmont Hills* permits the lessee to extend by speculating as to whether or not the land is capable of producing instead of requiring actual production. The court in *Belmont Hills* determined that the lease violated public policy because the lessee "may extend the lease in question indefinitely by either self-determining that oil and gas…are capable of being produced in paying quantities or

12

(4:14cv143)

commencing preparations for drilling." *Belmont Hills*, Case No. 11-CV-290 (ECF No. 17-1 at 8).

In the instant case, the Lease allows no such freedom to the lessor because the lessor must produce or engage in productive activity that develops the land. The language in the Lease's habendum clause regarding storage and removal reveals that the parties intended for the lessee to engage in more than estimating the land's production capabilities. Storage and removal are real, productive activities that require action that affects the property, unlike determining capability.

Lastly, *Clark* is distinguishable from this case because the lessee in *Clark* engaged in production for "ordinary household uses." Case No. 12-CI-0278 (ECF No. 17-3 at 2). Ordinary, household use is not considered production. *Id*. *See also Morrison v. Petro Evaluating Services Inc.*, No. 2004 CA 0004 2005 WL 2715578, at *5 ( Ohio Ct. App. Oct. 21, 2005) (domestic, household use is not "production"). Plaintiffs provide no evidence that Everflow is using the shallow depths well for domestic, household use.

Plaintiffs alternatively argue that the Lease lacks environmental standards and is outdated with respect to public safety. ECF Nos. 12 at ¶¶77-78; 17 at 19. However, Plaintiffs provide no legal authority that contemplates the environmental, health, or safety effects that contemporary oil and gas production has when applied to older leases. Plaintiff has not alleged facts that support such a finding. Accordingly, Plaintiffs' claims with respect to health, safety, and the environment are merely conceivable rather that plausible. *See Iqbal*, 556 U.S. at 678. Plaintiffs' public policy claim is dismissed.

**D. Breach of Implied Covenant to Reasonably Develop Land**

13

(4:14cv143)

Ohio law recognizes the existence of implied covenants in oil and gas leases including the implied covenant to reasonably develop the land. *Am. Energy Serv. v. Lekan*, 598 N.E.2d 1315, 1321 (Ohio Ct. App. 1992). Plaintiffs argue that Defendants breached an implied covenant to reasonably develop the land because they did not produce within their deep rights. ECF No. 14 at 15, ¶¶94-95.

Generally, parties to an oil and gas lease may waive implied covenants. *See Bushman v. MFC Drilling Inc.*, Case No. 2403-M ,1995 WL 434409 at *2 (Ohio Ct. App. July 19, 1995) ("While gas and oil leases contain an implied covenant requiring the lessee to reasonably develop the leased property, Ohio courts have consistently enforced express provisions in such leases that disclaim the implied covenant."). In the instant case, the Lease states that "no implied covenant, agreement or obligation shall be read into this agreement or imposed upon the parties or either of them." ECF No. 21-1 at 1. Therefore, the Lease contains an express provision that disclaims the implied covenant.

Plaintiffs argue that the waiver in the Lease is a "general waiver," and enforcing the waiver would violate public policy. ECF No. 17 at 21. Plaintiffs submit that such a waiver is the result of the freedom of contract, and that "complete freedom of contract is not permitted for public-policy reasons." ECF No. 17 at 22-23. However, Ohio case law applying general waivers adequately considered public policy. *See Bushman*, 1995 WL 434409, at *2 ("we are unable to conclude that public policy requires anything more than a general waiver of implied covenants."). The Court is also unable to conclude that the waiver violates public policy because, as already described, development is occurring on the property. Accordingly, the Court dismisses

(4:14cv143)

Plaintiffs' breach of implied covenant claim.

### E. Forfeiture

The Court finds no merit in Plaintiffs' forfeiture claim brought pursuant to R.C. § 5301.332. R.C. § 5301.332 applies to lands "upon which there are *no* producing or drilling oil or gas wells…[and] failure of the lessee, his successors or assigns, to abide by specifically described covenants provided for in the lease, or because the term of the lease has expired." (Emphasis added) Because the Court finds production within the development unit that holds the entire lease, *via* the Everflow well, there is no lack of production. Plaintiffs' forfeiture claim is dismissed.

### F. Lack of Mutuality and Consideration

Plaintiffs argue that the Lease lacks mutuality because Defendants do not have an obligation to produce. ECF No. 17 at 25. However, as the Court has already stated, the assignments of interest are not new contracts. Therefore, the Everflow well production fulfills Defendants' obligation to produce.

Plaintiffs also assert a failure of consideration claim. *Id*. Failure of consideration "is the neglect, refusal and failure of one of the contracting parties to do, perform, or finish [the consideration] after making and entering into the contract…" *Henry v. Reich*, 72 N.E.2d 500, 501 (Ohio Ct. App. 1947). Again, Plaintiffs rely on the assumption that Defendants are bound to produce under the Lease. However, as assignees, Defendants are not parties to a new contract. Instead, they are interest holders in a lease that requires production on the unitized property. *See Gardner*, 7 N.E.3d at 515. The requisite production is occurring on the unitized property *via* the

15

(4:14cv143)

Everflow well.  Plaintiffs' lack of mutuality and consideration claims are dismissed.

### G.  Quiet Title

Plaintiffs assert a quiet title claim under R.C. §5303.01.  ECF No. 14 at 19.  "An action may be brought by a person in possession of real property, by himself or tenant, against any person who claims an interest therein adverse to him, for the purpose of determining such adverse interest."  R.C. § 5303.01.  Plaintiffs rely on *Lansinger v. United Petroleum Corp.*, 471 N.E.2d 869 (Ohio Ct. App. 1984) in support of their argument that they lack an "adequate remedy of law" for Defendants' lack of production of their deep rights.  ECF No. 14 at 19-20, ¶125.  However, unlike the present case, *Lansigner* involved a lessee who "…had not drilled a well which was producing oil or gas, as required by the lease."  *Lansinger*, 471 N.E.2d at 872.  Once again, Plaintiffs rely on the assumption that Defendants are bound by a separate version of the Lease or have an interest outside of the development unit that requires them to produce their deep rights.  And once again, the Court finds that Defendants are bound by the Lease, which is producing.  As a result, Plaintiffs' quiet title claim is dismissed.

### IV. Conclusion

For the reasons explained above, the Court grants Defendants' motion to dismiss (ECF No. 15).

IT IS SO ORDERED.

| | |
|---|---|
|   July 30, 2014 |   */s/ Benita Y. Pearson* |
| Date | Benita Y. Pearson |
| | United States District Judge |

16